1 **WEILAND, GOLDEN**
**SMILEY, WANG EKVALL & STROK, LLP**
2 Jeffrey I. Golden, State Bar No. 133040
jgolden@wgllp.com
3 Hutchison B. Meltzer, State Bar No. 217166
hmeltzer@wgllp.com
4 Beth E. Gaschen, State Bar No. 245894
bgaschen@wgllp.com
5 650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
6 Telephone:   (714) 966-1000
Facsimile:    (714) 966-1002
7
Attorneys for Debtor
8 North Valley Mall, LLC,
a California limited liability company
9

10                    **UNITED STATES BANKRUPTCY COURT**

11                    **CENTRAL DISTRICT OF CALIFORNIA**

12                             **SANTA ANA DIVISION**

13 In re                                         Case No. 8:09-bk-19346-TA

14 NORTH VALLEY MALL, LLC, a California          Chapter 11 Case
limited liability company,

15                                                **SECOND AMENDED DISCLOSURE**
                           Debtor.              **STATEMENT DESCRIBING DEBTOR'S**
16                                               **SECOND AMENDED CHAPTER 11 PLAN**
                                                **OF REORGANIZATION**
17
                                                <u>**Cont. Disclosure Statement Hearing**</u>
18
                                                DATE:    January 13, 2010
19                                               TIME:    10:00 a.m.
                                                PLACE:   Courtroom 5B
20                                                        411 W. Fourth St.
                                                        Santa Ana, CA 92701
21
                                                <u>**Cont. Disclosure Statement Hearing**</u>
22
                                                DATE:    March 31, 2010
23                                               TIME:    11:00 a.m.
                                                PLACE:   Courtroom 5B
24                                                        411 W. Fourth St.
                                                        Santa Ana, CA 92701
25

26

27

28

386462.2                                        DISCLOSURE STATEMENT

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................... 1

A.    Purpose of this Document.......................................................... 1

B.    Deadlines for Voting and Objecting; Date of Plan Confirmation
Hearing .................................................................................... 2

    1.    Time and Place of the Confirmation Hearing..................... 2

    2.    Deadline for Voting for or Against the Plan ...................... 3

    3.    Deadline for Objecting to the Confirmation of the Plan..... 3

    4.    Identity of Person to Contact for More Information
Regarding the Plan.......................................................... 3

C.    Disclaimer ................................................................................ 3

II.    BACKGROUND ..................................................................................... 4

A.    Description and History of the Debtors' Business ........................ 4

    1.    The Property .................................................................. 4

    2.    The Secured Debt .......................................................... 4

B.    Principals/Affiliates of the Debtor's Business ............................. 4

C.    Management of the Debtor Before and After the Bankruptcy..... 5

D.    Events Leading to Bankruptcy ................................................. 5

E.    Significant Events During the Bankruptcy ................................. 7

    1.    Bankruptcy Proceedings ................................................ 7

        a.    Cash Collateral ................................................... 7

        b.    Utility Procedures Motion.................................... 7

        c.    Appointment of the Committee ............................. 8

        d.    Claims Bar Date ................................................ 8

        e.    Employment of the Debtor's Professionals ............ 8

        f.    The Debtor's Schedules, Interim Statements, and
Operating Reports .............................................. 9

    2.    Other Legal Proceedings................................................ 9

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

# TABLE OF CONTENTS (cont.)

**Page**

3.  Actual and Projected Recovery of Preferential or Fraudulent Transfers ........................................................... 9

4.  Procedures Implemented to Resolve Financial Problems ................ 9

5.  Current and Historical Financial Conditions .................................. 11

III.  SUMMARY OF THE PLAN OF REORGANIZATION ............................................. 11

A.  What Creditors and Interest Holders will Receive Under the Proposed Plan ........................................................................ 12

B.  Unclassified Claims ................................................................................. 12

1.  Administrative Expenses ................................................ 12

a.  Professional Fee Claims ................................................ 13

2.  Priority Tax Claims ........................................................ 14

C.  Classified Claims and Interests ................................................ 14

1.  Secured Claims ........................................................ 15

2.  Priority Unsecured Claims ................................................ 16

3.  General Unsecured Claims ................................................ 17

4.  Class of Interest Holders ................................................ 18

D.  Means of Effectuating the Plan ................................................ 18

1.  Funding for the Plan ................................................ 18

2.  The Structure of the Reorganized Debtor and Post-Confirmation Management ................................................ 18

3.  Disbursing Agent ........................................................ 19

E.  Risk Factors ........................................................................ 19

F.  Other Provisions of the Plan ................................................ 20

1.  Executory Contracts and Unexpired Leases ..................... 20

2.  Changes in Rates Subject to Regulatory Commission Approval ........................................................................ 20

3.  Retention of Jurisdiction ................................................ 20

G.  Tax Consequences of Plan ................................................ 21

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

## TABLE OF CONTENTS (cont.)

Page

IV.   CONFIRMATION REQUIREMENTS AND PROCEDURES ................................ 22

   A.   Who May Vote or Object .................................................................. 23

      1.   Who May Object to Confirmation of the Plan ................................ 23

      2.   Who May Vote to Accept/Reject the Plan ..................................... 23

         a.   What is an Allowed Claim/Interest .................................... 23

         b.   What is an Impaired Claim/Interest .................................. 24

      3.   Who is Not Entitled to Vote ........................................................ 24

      4.   Who Can Vote in More Than One Class ....................................... 24

      5.   Votes Necessary to Confirm the Plan .......................................... 25

      6.   Votes Necessary for a Class to Accept the Plan ........................... 25

      7.   Treatment of Nonaccepting Classes ........................................... 25

      8.   Request for Confirmation Despite Nonacceptance by
         Impaired Classes ....................................................................... 25

   B.   Liquidation Analysis ........................................................................ 26

   C.   Feasibility ...................................................................................... 27

   D.   Claims ........................................................................................... 28

V.    EFFECT OF CONFIRMATION ................................................................... 29

   A.   Discharge ....................................................................................... 29

   B.   Revesting of Property in the Reorganized Debtors .............................. 31

   C.   Modification of the Plan .................................................................... 31

   D.   Post-Confirmation Status Report ...................................................... 31

   E.   Quarterly Fees ................................................................................ 31

   F.   Post-Confirmation Conversion/Dismissal ........................................... 31

   G.   Final Decree ................................................................................... 32

DECLARATION OF DAVID KLEIN .................................................................... 33

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

# I.  **INTRODUCTION**

The above-referenced debtor and debtor-in-possession, North Valley Mall, LLC ("Debtor"), is the Debtor in a Chapter 11 bankruptcy case.  The Debtor commenced its bankruptcy case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code (the "Bankruptcy Code"), 11 U.S.C. § 101 *et seq*.  Chapter 11 allows the debtor, and under some circumstances, creditors and other parties in interest to propose a plan of reorganization.  A plan may provide for a debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.  The Debtor is the party proposing the plan sent to you in the same envelope as this document.  THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

This plan (the "Plan") is a reorganizing plan.  As described in further detail below, the Debtor seeks to accomplish payments under the Plan by paying creditors over time from the Debtor's future operations.  The Effective Date of the Plan will be 30 days from the entry of an order confirming the Plan (the "Confirmation Order").

## A.  **Purpose of this Document**

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT**:

1.  **WHO CAN VOTE OR OBJECT,**

2.  **WHAT THE TREATMENT OF YOUR CLAIM IS (*i.e.*, what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,**

3.  **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,**

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1    **4.    WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR**

2    **NOT TO CONFIRM THE PLAN,**

3    **5.    WHAT IS THE EFFECT OF CONFIRMATION, AND**

4    **6.    WHETHER THIS PLAN IS FEASIBLE.**

5    This Disclosure Statement cannot tell you everything about your rights.  You should

6    consider consulting your own lawyer to obtain more specific advice on how the Plan will

7    affect you and what is the best course of action for you.  Weiland, Golden, Smiley, Wang

8    Ekvall & Strok, LLP, general insolvency counsel to the Debtor, does not represent you.

9    Be sure to read the Plan as well as the Disclosure Statement.  If there are any

10    inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will

11    govern.

12    The Code requires that a disclosure statement contain "adequate information"

13    concerning the Plan.  By order entered on _____, 2010 the Bankruptcy Court (the

14    "Court") approved this document as an adequate Disclosure Statement, containing

15    enough information to enable parties affected by the Plan to make an informed judgment

16    about the Plan.  Any party can now solicit votes for or against the Plan.

17    **B.    Deadlines for Voting and Objecting; Date of Plan Confirmation**

18    **Hearing**

19    THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS

20    DISCLOSURE STATEMENT.  IN OTHER WORDS, THE TERMS OF THE PLAN ARE

21    NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS

22    THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL

23    CREDITORS AND INTEREST HOLDERS IN THIS CASE.

24    **1.    Time and Place of the Confirmation Hearing**

25    The hearing where the Court will determine whether or not to confirm the Plan will

26    take place on March 31, 2010, at 11:00 a.m. in Courtroom 5B of the Ronald Reagan

27    Federal Building and United States Courthouse located at 411 West Fourth Street, Santa

28    Ana, California 92701.

*Weiland, Golden,*
*Smiley, Wang Ekvall & Strok, LLP*
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

### 2.    Deadline for Voting for or Against the Plan

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to:

> Weiland, Golden,
> Smiley, Wang Ekvall & Strok, LLP
> Beth E. Gaschen, Esq.
> 650 Town Center Drive, Suite 950
> Costa Mesa, California 92626

Ballots may also be submitted by fax to (714) 966-1002, attention: Beth E. Gaschen, or by email to bgaschen@wgllp.com.  Your ballot must be received no later than 5:00 p.m. (Pacific Standard Time) on March 3, 2010 or it will not be counted.

### 3.    Deadline for Objecting to the Confirmation of the Plan

Objections to the confirmation of the Plan must be filed with the Court and served upon counsel for the Debtor by March 9, 2010.

### 4.    Identity of Person to Contact for More Information
### Regarding the Plan

Any interested party desiring further information about the Plan should contact Jeffrey I. Golden, Hutchison B. Meltzer, or Beth E. Gaschen of Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP, by phone at (714) 966-1000 or by e-mail at jgolden@wgllp.com, hmeltzer@wgllp.com, or bgaschen@wgllp.com.

### C.    **Disclaimer**

The financial data relied upon in formulating the Plan is based on the financial records of the Debtor and the projections prepared by the Debtor's current management and their consultants.  The Debtor represents that everything stated in the Disclosure Statement is true to the Debtor's best knowledge.  The Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

## II.    BACKGROUND

### A.    Description and History of the Debtors' Business

#### 1.    The Property

North Valley Plaza (the "Property") is a shopping center located in Chico, California, with a total area of 33.55 acres, of which 243,800 square feet is leasable.  It is characterized in the commercial real estate industry as a retail "power center" because of its size and of the type and size of its tenants.  The Property's primary tenants include Trader Joe's, Dollar Tree, Michael's, a Cinemark movie theater, and, prior to December 2008, Mervyn's.

The Debtor was formed in 2004 for the purpose of purchasing and operating the Property.  Upon completing the purchase, the Debtor remodeled the Property for the purpose of increasing the gross leasable area and updating the existing improvements.

#### 2.    The Secured Debt

To accomplish the remodel, on July 30, 2004, the Debtor obtained a construction loan from KeyBank, N.A. ("KeyBank") with an original principal amount of $18,500,000 (the "Loan") secured by the Property and an assignment of rents (the "Assignment of Rents").  On September 28, 2005, KeyBank agreed to increase the principal amount of the Loan to $26,250,000.  The original maturity date of the Loan was August 1, 2006.  Pursuant to multiple extension agreements, the maturity date was extended to October 1, 2008.  Due to the state of the real estate and credit markets, the Debtor was unable to make the balloon payment due on October 1, 2008, and KeyBank issued a formal notice of default on or about December 30, 2008.

### B.    Principals/Affiliates of the Debtor's Business

#### 1.    The Membership Interests in the Debtor

The two entities which have membership interests in the Debtor are: (a) Parks Diversified, LP ("Parks Diversified") (85.6% membership interest); and (b) CODA Development (14.4% membership interest).  After the Effective Date, Parks Diversified will own 100% of the membership interests in the Reorganized Debtor.  In exchange for 100%

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1  of the membership interest in the Reorganized Debtor, the claim held by Parks Diversified

2  against the estate, in the amount of $120,149.10, will be waived, and $150,000 was paid

3  by Parks Diversified to the Debtor's general insolvency counsel for payment of the

4  Debtor's legal fees and expenses.

5         2.      **Transfers between the Debtor and Affiliated Companies**

6        There are several companies which are affiliated with the Debtor.  These

7  companies include: Maple Lane Winery; Aliso Commons Corner, LLC; M&Z Valley

8  Associates, LLC; Parks Diversified; Parks Family Trust; Platinum Construction; and PZ

9  Partners, LLC.  Over the years, the companies have provided loans to one another.  All of

10  these loans have been properly documented.  The loans that the Debtor made to these

11  companies can be seen on the balance sheets attached hereto at Exhibit "2" under "Notes

12  Receivables."  During the time when the Debtor's access to funds in the Lockbox was

13  restricted, these same companies lent the Debtor money to cover its operating expenses.

14  These loans are listed in Exhibit "2" on the Balance Sheets as "Long Term Liabilities" and

15  are advances "from" affiliates, not "to" affiliates.

16        C.      **Management of the Debtor Before and After the Bankruptcy**

17        Prior to the bankruptcy filing, the Debtor was managed by Parks Diversified.  Parks

18  Diversified has, and will continue to, manage the day-to-day operations of the Debtor

19  post-petition.  After the Effective Date, Parks Diversified will continue to manage the

20  Reorganized Debtor.

21        D.      **Events Leading to Bankruptcy**[1]

22        In connection with the loan extension agreements, in November 2007, the Debtor

23  executed a lockbox account agreement ("Lockbox Agreement"), whereby the Property's

24  tenants paid rent, insurance, CAMS, and property taxes directly into a lockbox account

25  ("Lockbox").  When the Lockbox was first established, KeyBank would receive payments

26

27      [1] KeyBank generally disagrees with and objects to the Debtor's characterization of the pre-petition events concerning the Debtor's loan with KeyBank.

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  from the Lockbox in an amount to satisfy its monthly debt service under the Loan, and the

2  Debtor would receive all remaining funds in the Lockbox.

3      KeyBank, over time, increasingly restricted the Debtor's access to the Lockbox.

4  Pursuant to an amendment to the Lockbox Agreement dated January 2, 2008, the Debtor

5  no longer received all funds in the Lockbox exceeding KeyBank's debt service, and

6  instead only received enough to cover its monthly operating expenses.  KeyBank retained

7  the right, in its sole discretion, to deny payment to the Debtor for any of its operating

8  expenses.  Once KeyBank issued the notice of default, the Lockbox was essentially

9  frozen.  Between October 2008 and April 2009, the Debtor received no disbursements

10  from the Lockbox to cover its operating expenses.  Instead, the principals of the Debtor

11  paid most of the Debtor's expenses out of their own funds, or from loans made by

12  affiliated companies, and hoped that KeyBank would reimburse them for the costs when

13  requested.[2]  In July, 2009, KeyBank withdrew funds from the Lockbox to pay property

14  taxes owed on the Property.

15      On June 26, 2009, the Debtor and KeyBank executed a forbearance agreement

16  (the "Forbearance Agreement"), whereby KeyBank agreed to forbear from enforcing its

17  rights with respect to the Debtor's default under the Loan.  In the Forbearance Agreement,

18  KeyBank acknowledged the outstanding amount of the Loan to be $24,531,573.02.  The

19  Forbearance Agreement expired on August 15, 2009.  After multiple continuances, a

20  foreclosure sale was scheduled for September 3, 2009.  During the time the Debtor and

21

22

23

24  _____

[2] The Debtor and KeyBank disagree as to whether disbursements were requested and not made.
25  KeyBank contends that it reached out to the Debtor numerous times to inquire about the payment of
operating expenses, but never received a request for funds from the Lockbox.  On the other hand, the
26  Debtor asserts that it received communications from KeyBank stating that no disbursements would be made
until a modification of the Loan was complete (this was in December) and then in March the Debtor made
27  numerous requests for reimbursement of invoices.  The Debtor maintains that a disbursement was not made
until late April and this only covered operating expenses through February.

28

1  KeyBank were negotiating in an effort to restructure the Loan, KeyBank withdrew over

2  $910,000 from the Lockbox.[3]  This left an approximate balance of $14,000.

3          In order to maximize value for all of the Debtor's creditors and parties in interest, on

4  September 2, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief

5  under chapter 11.

6      **E.      Significant Events During the Bankruptcy**

7          **1.      Bankruptcy Proceedings**

8                  a.      Cash Collateral

9          On September 11, 2009, the Debtor filed an emergency motion for order

10  authorizing the use of cash collateral and requiring the turnover of post-petition rents to

11  the Debtor (the "Cash Collateral Motion").  Pursuant to the Cash Collateral Motion, the

12  Debtor sought use of the cash collateral to make the minimum disbursements necessary

13  to maintain and operate the Property through November 30, 2009.  On October 13, 2009,

14  the Court entered an order granting the Cash Collateral Motion and authorizing the Debtor

15  to use cash collateral through October 28, 2009, on an interim basis, and set a final

16  hearing on the use of cash collateral for the same date.

17          At the final hearing, the Court approved the use of cash collateral on a final basis

18  through October 28, 2009, and also authorized the continued use of cash collateral on a

19  final basis through February 28, 2010.

20                  b.      Utility Procedures Motion

21          On September 22, 2009, the Debtor filed a motion to prevent utility providers from

22  terminating service following the commencement of the case, and to establish procedures

23  for utility providers to request and obtain adequate assurance of future payment pursuant

24

25      [3] The Debtor was unaware of the fact that KeyBank was taking funds from the Lockbox during the
    negotiation period.  KeyBank asserts that it had no duty to disclose this information to the Debtor.  It is the

26  Debtor's position that KeyBank's actions were improper and caused the Debtor harm.  On November 17,
    2009, the Debtor filed a complaint against KeyBank in Orange County Superior Court.  The complaint

27  contains causes of action for: (1) breach of contract; (2) negligence; (3) fraud; and (4) conversion.  The
    summons and the complaint are attached hereto as Exhibit "1."

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  to 11 U.S.C. § 366 (the "Utility Motion").  The Debtor also filed an application to have the

2  Utility Motion heard on shortened notice (the "OST Application").  On September 23, 2009,

3  the Court entered an order granting the OST Application and setting a hearing on the

4  Utility Motion on September 25, 2009.  The Court entered an order granting the Utility

5  Motion on October 14, 2009.

6              c.      Appointment of the Committee

7        On October 1, 2009, the Office of the United States Trustee (the "OUST")

8  appointed the Joint Committee of Creditors Holding Unsecured Claims (the "Committee")

9  to represent the interests of the general unsecured creditors.  The members of the

10  Committee are: (1) Scott Gibson Architect, Inc.; (2) Accent Landscapes; and (3) Brooks

11  Commercial Services.  An order approving the employment of the Law Office of Thomas

12  H. Casey as the Committee's counsel was entered on January 19, 2010.

13              d.      Claims Bar Date

14        On October 15, 2009, the Debtor filed a motion for an order requiring that all

15  creditors and parties in interest file proofs of claim within 60 days after service of notice of

16  the bar date (the "Bar Date Motion").  An order approving the Bar Date Motion was

17  entered on November 19, 2009.  The Debtor served the "Notice of Last Date to File Proofs

18  of Claim or Interest" on November 23, 2009.  The last day to file proofs of claim or interest

19  is January 22, 2010.

20              e.      Employment of the Debtor's Professionals

21        On October 26, 2009, the Debtor filed its application to employ Weiland, Golden,

22  Smiley, Wang Ekvall & Strok, LLP ("Weiland Golden") as its general bankruptcy counsel.

23  An order approving the employment of Weiland Golden was entered on January 19, 2010.

24  The Debtor is also currently preparing employment applications for the following

25  professionals: (1) Robertson & Thommarson, LLP, as the Debtor's special litigation

26  counsel; (2) CB Richard Ellis ("CBRE") as the Debtor's broker; and (3) Michael Issa, as a

27  consultant and expert for plan confirmation purposes.

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

1      f.      The Debtor's Schedules, Interim Statements, and Operating

2              Reports

3          The Debtor believes that it has complied and will continue to comply with all of its

4   duties under 11 U.S.C. §§ 521, 1106 and 1107, and the applicable Guidelines of the

5   OUST.  On September 18, 2009, the Debtor filed its schedules and statement of financial

6   affairs ("SOFA").  The Debtor also filed its 7-Day Package and Monthly Operating Reports

7   for September, October, and November 2009 with the OUST.  The Debtor is current on its

8   MORs and on all fees owed to the OUST.

9          **2.      Other Legal Proceedings**

10             a.      Litigation with KeyBank

11         As stated above, on November 17, 2009, the Debtor filed a complaint against

12  KeyBank in Orange County Superior Court.  *See* Exhibit "1" for a copy of the summons

13  and complaint.  Should any funds become available to the Debtor from this litigation,

14  whether through settlement or by a ruling in its favor, those funds will be used to make

15  necessary plan payments to unsecured creditors and any remainder will go to the

16  Reorganized Debtor.

17             b.      Settlement of Claims

18         Pursuant to 11 U.S.C. § 1123(b)(3), a plan may provide for the settlement of any

19  claim belonging to the debtor or to the estate.  The Debtor is requesting that the Court

20  approve the following compromises of claims:

21             (1)      Mervyn's Bankruptcy

22         Mervyn's was a tenant of the Property until December 2008.  The Debtor has filed

23  proofs of claim in Mervyn's bankruptcy cases for lease rejection damages.  Mervyn's has

24  objected to those proofs of claim.  In order to avoid the time and expense associated with

25  litigating the claim objection, the Debtor and Mervyn's have entered into a stipulation

26  resolving the claim objection.  The Stipulation provides that the Debtor will have an

27  allowed general unsecured claim against the Mervyn's estate in the amount of

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

386462.2                                    9                      DISCLOSURE STATEMENT

1  $3,191,541. However, because the Mervyn's estate is administratively insolvent, the

2  Debtor does not expect to receive an actual distribution based on its claim.

3  (2)      Hancock Fabrics' Bankruptcy

4  Hancock Fabrics, Inc. ("Hancock") was a tenant of the Property.  In 2007, Hancock

5  filed for bankruptcy in Delaware.  On or about June 25, 2007, the Delaware Bankruptcy

6  Court authorized Hancock to assume and assign the unexpired non-residential real

7  property lease, of which the Debtor is the lessor, to Dollar Tree.  As part of this

8  assumption and assignment, Hancock paid to the Debtor an undisputed cure amount of

9  $9,459.02.  A dispute arose regarding whether an additional $5,000 was due for attorney's

10  fees.  This disputed cure amount was placed in an escrow account pending a written

11  agreement between the parties or a final order of the Court.  The Debtor requests

12  authorization from this Court to settle this dispute with Hancock.  In order to avoid the time

13  and cost associated with litigation, the Debtor and Hancock have agreed to settle the

14  matter.  In exchange for a waiver of claims against Hancock's estate, the Debtor will

15  receive $1,500.  The Debtor expects that the legal fees that it would incur in actually

16  litigating the matter would exceed any possible recovery that the Debtor might receive.

17  The settlement provides a benefit to the estate, however small, while saving estate

18  resources.

19  **3.      Actual and Projected Recovery of Preferential or Fraudulent**

20  **Transfers**

21  The Debtor does not believe there are any preference, fraudulent conveyance, or

22  other avoidance actions to pursue.

23  **4.      Procedures Implemented to Resolve Financial Problems**

24  The Debtor's financial problems related to the operation of the Property were

25  primarily resolved by the commencement of the case and the ability to use cash collateral.

26  Prior to the Petition Date, revenue from the Property was deposited into the Lockbox

27  controlled by KeyBank, which would then release certain funds back to the Debtor.  The

28  funds released to the Debtor, however, were insufficient to pay necessary operating

Welland, Golden,
Smiley, Wang Ekvall & Strok, LLP

1  expenses.[4]  Upon the commencement of the case, the Debtor obtained the use of cash

2  collateral.  In addition to this, all tenants are now paying their rent directly to the Debtor.

3  This has provided the Debtor with sufficient funds to pay operating expenses.

4             **5.**     **Current and Historical Financial Conditions**

5          Attached hereto as Exhibit "2" are copies of: (1) a balance sheet as of December

6  31, 2008; (2) a profit and loss statement from January through December 2008; (3) a

7  balance sheet as of June 30, 2009; (4) a profit and loss statement for January through

8  June 2009; (5) the Debtor's September 2009 Monthly Operating Report; and (6) the

9  Debtor's October 2009 Monthly Operating Report.

10  **III.**    **SUMMARY OF THE PLAN OF REORGANIZATION**

11          The following is a summary of the material provisions of the Plan, although it

12  should not replace a review of the Plan in its entirety.

13          The goal of the Plan is to pay back creditors through the funds generated by the

14  continued operation of the Property.  KeyBank will receive monthly interest only payments

15  in arrears for the first three years, beginning on the 15th day of the first full month after the

16  Effective Date and then on the 15th day of each subsequent month.  Beginning on the

17  15th day of the 37th month following the Effective Date, the Debtor will pay monthly

18  principal and interest based on a 30 year amortization.  KeyBank will receive a fixed

19  interest rate of 6%, or such other rate as is necessary to comply with § 1129(b)(2)(A)(i)(II).

20  A balloon payment of the balance of the principal amount plus accrued, unpaid pre-

21  petition interest will mature and be all due and payable on the 15th day of the 84th month

22  following the Effective Date.  A schedule of the payments to KeyBank is attached hereto

23  as Exhibit "3."  The Debtor will make monthly payments over 1 year to the Butte County

24  Treasurer-Tax Collector on account of its priority tax claim.  The Franchise Tax Board will

25  have its priority claim paid in full on the Effective Date.  As for the unsecured creditors, the

26

27     [4] As discussed above in footnote 2, the Debtor and KeyBank disagree as to whether requests for reimbursements of operating expenses were made.  KeyBank generally disagrees with and objects to the Debtor's characterization of the pre-petition events concerning the Debtor's loan with KeyBank.

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

1  Debtor will make monthly payments to the unsecured creditors over 3 years, at which time

2  the unsecured claims will be paid in full.  The non-insider unsecured creditors will receive

3  100% of the monthly payments until paid in full plus interest, which will be completed

4  before the end of year 2.  The insider unsecured claims will begin to receive monthly

5  payments beginning in year 2, after the non-insider claims are paid in full plus interest,

6  and will be paid in full by the end of year 3.  *See* Exhibit "5" attached hereto for a list of all

7  unsecured creditor claims and whether the claim is that of an insider.  All other creditors

8  will be paid in full on the Effective Date.

9   **A.    What Creditors and Interest Holders will Receive Under the Proposed**

10       **Plan**

11       As required by the Bankruptcy Code, the Plan classifies claims and interests in

12  various classes according to their right to priority.  The Plan states whether each class of

13  claims or interests is impaired or unimpaired.  The Plan provides the treatment each class

14  will receive.  In no event shall any creditor receive more than the creditor's allowed claim,

15  plus interest, to the extent provided herein.

16   **B.    Unclassified Claims**

17       Certain types of claims are not placed into voting classes but are instead

18  unclassified.  They are not considered impaired and they do not vote on the Plan because

19  they are automatically entitled to certain treatment under the Bankruptcy Code.

20  Accordingly, the following claims have not been placed into a class:

21       **1.    Administrative Expenses**

22       Administrative expenses are claims for costs or expenses of administering the

23  Debtor's case which are allowed under § 507(a)(2) of the Bankruptcy Code.  The

24  Bankruptcy Code requires that all allowed administrative claims be paid on the Effective

25  Date of the Plan, unless a particular claimant agrees to a different treatment.

26       The following chart lists all of the Debtor's § 507(a)(2) unpaid administrative claims

27  and their treatment under the Plan:

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

| Description | Estimated Amount Owed | Treatment |
|---|---|---|
| Clerk's Office Fees | $0 | Paid in full on or before the Effective Date. |
| Office of the United States Trustee | $0 | Paid in full on or before the Effective Date. |
| Weiland, Golden | $90,000, estimated as of the Effective Date, which would be in addition to the fees and expenses paid to Weiland Golden post-petition. | Paid on the earlier of the Effective Date or in accordance with the Monthly Payment Procedure. |
| Robertson & Thommarson, LLP | $70,000, estimated as of the Effective Date, which would be in addition to the fees and expenses paid to Robertson & Thommarson, LLP post-petition | Paid on the earlier of the Effective Date or in accordance with the Monthly Payment Procedure. |
| TOTAL | $160,000[5] | |

a.    Professional Fee Claims

Any professional seeking allowance of a professional fee claim for services rendered prior to the Effective Date in connection with the Debtor's case must (1) file their application for allowance of compensation and reimbursement of expenses on or before 45 days after the Effective Date or such other date as may be set by the Bankruptcy Court, and (2) have the fees and expenses allowed by a final order. Any party in interest may file an objection to such an application within the time provided by the Local Bankruptcy Rules or within any other period that the Bankruptcy Court sets. Professionals holding professional fee claims who do not timely file and serve their applications for payment will be forever barred from asserting these claims against the Reorganized Debtor or its property.

---

[5]    As disclosed in the Debtor's SOFA, pre-petition Weiland Golden received a retainer from the Debtor in the amount of $30,000. Post-petition, Parks Diversified provided Weiland Golden with an additional $150,000 for its retainer. From the $180,000 received, $17,884.75 was applied to pre-petition fees and costs, leaving a balance of $162,115.25. The Court also authorized the Debtor's use of cash collateral to pay for administrative expenses, including its legal fees. The amount budgeted each month is $40,000. Between the retainer and the use of cash collateral the Debtor may not need to pay any administrative expenses to Weiland Golden on the Effective Date, and the amount that will need to be paid to Robertson & Thommarson could be far less than estimated above.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

As indicated above, the Debtor may need to pay $160,000 worth of administrative claims on the Effective Date of the Plan, although the actual amount that the Debtor will have to pay may be less than this.  The Debtor projects that it will have cash on hand in excess of this amount on the Effective Date to make the necessary payments.  In its 180-day budget, the Debtor projects that by January 2010 it will have $156,354.85 of cash on hand and by February 2010 this amount should increase to $299,301.48.  The 180-day budget is attached hereto as Exhibit "4."

### 2.    Priority Tax Claims

Priority tax claims include certain unsecured income, employment and other taxes described by Bankruptcy Code § 507(a)(8).  The Bankruptcy Code requires that each holder of such a § 507(a)(8) priority tax claim receive the present value of such claim in regular installment payments in cash, over a period not exceeding five years from the Petition Date.  The following chart lists all of the Debtor's known § 507(a)(8) priority tax claims and their treatment under the Plan:

| Description | Amount Owed | Treatment |
|---|---|---|
| Butte County Treasurer-Tax Collector <br> Parcel: 007-280-061-000 <br> Taxes due: 4/10/09 | $22,391.21 | The Butte County Treasurer-Tax Collector will receive monthly payments over 1 year from the Effective Date at the applicable interest rate.  The first payment will be made 30 days after the Effective Date.  The Reorganized Debtor shall have the right to pay the balance of the allowed priority tax claims in full at any time on or after the Effective Date without premium or penalty of any kind.  Payments will begin on the 15th day of the first full month after the Effective Date and then will be made on the 15th day of each subsequent month. |
| Franchise Tax Board | $6,963.37 | The Franchise Tax Board will be paid in full on the Effective Date. |

### C.    Classified Claims and Interests

As required by the Bankruptcy Code, the Plan places claims and interests into various classes according to their right to priority and other relative rights.  The charts below list each class of claims and interests established under the Plan and indicates whether the class is impaired or unimpaired by the Plan.  A class is unimpaired if the Plan

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

1  leaves unaltered the legal, equitable, and contractual rights to which the holders of claims

2  or interests in the class are entitled, with limited exceptions.

3          **1.    Secured Claims**

4          Secured claims are claims secured by liens on property of the estate.  The

5  following chart lists all classes containing the Debtor's secured claims and their treatment

6  under the Plan:

| Class # | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
|---------|-------------|----------------|----------------|-----------|
| 1 | Secured claim of KeyBank N.A.<br><br>• Collateral: The Property and Rents<br><br>• Priority of Security Interest: First<br><br>• Total Allowed Claim Amount: Current Est. $24,802,499.88<br><br>• Collateral Value: $28,250,000 | N | Y | KeyBank will be paid the total amount of its allowed claim (the "Principal Amount").as determined by the Court.[6]  Payments will be amortized over 30 years, all due in 7 years.<br><br>Debtor will pay KeyBank monthly interest only payments in arrears for the first three years, beginning on the 15th day of the first full month after the Effective Date and then on the 15th day of each subsequent month. Beginning on the 15th day of the 37th month following the Effective Date, the Debtor will pay monthly principal and interest based on a 30 year amortization.<br><br>Interest rate = 6% fixed, or such other rate of interest as is necessary to comply with 11 U.S.C. § 1129(b)(2)(A)(i)(II).<br><br>A balloon payment of the balance of the Principal Amount plus accrued, unpaid pre-petition interest will mature and be all due and payable on the fifteenth day of the 84th month following the Effective Date.<br><br>Payments are payable at the place identified in the First Amended and Restated Promissory Note dated September 28, 2005 (the "Note").  Sections 4(c) through (m), 5 and 6 of the Note are hereby incorporated by reference to the extent not inconsistent with this Plan.  A copy of the Note is attached hereto as Exhibit "8."<br><br>The Debtor will provide to KeyBank a rent roll and a profit and loss statement regarding the Property within twenty business days following the end of each calendar quarter.<br><br>KeyBank will retain its lien on the Property, pursuant to its existing deed of trust, which is hereby incorporated by reference to the extent consistent with this Plan.  A copy of the deed of trust is attached hereto as Exhibit "9."  In |

---

[6] As stated, the Debtor has commenced litigation against KeyBank in Orange County Superior Court. The Superior Court's ruling may ultimately determine the amount of KeyBank's claim against the estate or whether it even has  claim against the estate.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

| Class # | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
|---------|-------------|----------------|----------------|-----------|
|  |  |  |  | addition, the Debtor shall have the right to subdivide the existing four parcels of the Property, and KeyBank shall consent to such subdivision and execute such documents as are reasonably required to effectuate such subdivision.  KeyBank shall release the lien of the Deed of Trust on the sale or refinance of one or more legal parcels of the Property, provided that (a) KeyBank's claim including all accrued interest, is paid in full from the proceeds in the event of the sale or refinance of all of the Property, and (b) if less than all of the Property is sold or refinanced, including any future development, the remaining portions of the Property must constitute legal parcels, and the "release price" due to KeyBank shall be the lesser of (i) net proceeds from the sale or refinance, (ii) the amount allocated in the final appraisal of the Property (Ex "6") for that specific parcel of the Property sold or refinanced or the same proportion of such allocated amount as the parcel being sold or refinanced bears to the specific parcel (in the event of a further subdivision of such parcel), in accordance with its value represented on page 58 of the appraisal for ground leases, in relation to its value according to the appraisal for current tenants, or (iii) in accordance with the percentage of excess land value for any future development, and any additional amounts will be retained by the Debtor. |
|  |  |  |  | KeyBank shall be enjoined from enforcing its lien against the Property as long as there is (a) no material monetary default under the Plan that is not cured within 30 days of KeyBank giving a notice of an Event of Default (as described in Section 6.2(a) of the Deed of Trust), or (b) breach of a material covenant under the Plan (other than the obligation to pay money) that is not cured within 90 days of KeyBank giving a notice of an Event of Default (as described in Section 6.2(a) of the Deed of Trust.) |
|  |  |  |  | Lucia Parks will reaffirm the Guaranty. |
|  |  |  |  | The Principal Amount may be prepaid at any time without penalty. |
|  |  |  |  | The Clearing Account Agreement is terminated and of no further force or effect. |
|  |  |  |  | *See* Exhibit "3" for a schedule of payments to KeyBank. |

## 2.    Priority Unsecured Claims

Certain priority claims that are referred to in Bankruptcy Code §§ 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes.  The Bankruptcy Code requires that each

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  holder of the above priority claims receive cash on the Effective Date equal to the allowed

2  amount of such claim.  However, a class of unsecured priority claim holders may vote to

3  accept deferred cash payments of a value, as of the Effective Date, equal to the allowed

4  amount of such claim.  The following chart lists all classes containing the Debtor's

5  Bankruptcy Code §§ 507(a)(3), (4), (5), (6), and (7) priority claims and their treatment

6  under the Plan:

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 2 | Debtor does not expect that there will be any priority unsecured claims in this class. $0 | Y | Priority unsecured claims in this class, if any, will be paid in full within 30 days after the Effective Date. |

### 3.    General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under

Bankruptcy Code § 507(a).  The following chart identifies the Plan's treatment of the class

containing the Debtor's general unsecured claims:

| Class # | Description | Impaired (Y/N) | Treatment |
|---|---|---|---|
| 3 | General Unsecured Claims<br><br>Estimated total amount of claims: $873,006.79 plus 3.25% interest per annum<br><br>(For a chart of all general unsecured claims see Exhibit "5") | Y | The general unsecured creditors will be paid in full plus interest at a rate of 3.25% per annum over three years.  Non-insider unsecured claimants will receive 100% of the monthly payments from the Debtor in year one and in year two until their claims are paid in full plus interest.[7]  After the non-insider claims are paid in full, the Debtor will make monthly payments to the insider unsecured claimants.  The insider unsecured claims will be paid in full plus interest by the end of year three.  Payments will begin on the 15th day of the first full month after the Effective Date and then will be made on the 15th day of each subsequent month. |

---

[7] The total amount of the annual payments to the unsecured creditors is set forth in Exhibit "7."  The monthly payment to unsecured creditors will paid from the Debtor's available cash flow after plan payments to KeyBank.  As a result, the amount of the monthly payment may vary.  Regardless, all non-insider unsecured claims will be paid in full by the end of year two and all insider unsecured claims will be paid in full by the end of year three.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

### 4.    Class of Interest Holders

Interest holders are the parties who hold ownership interest (i.e. equity interest) in the Debtor.  The Debtor is a California limited liability company in which the owners hold ownership interests.  The following chart identifies the Plan's treatment of the class of Interest holders:

| Class # | Description | Impaired (Y/N) | Treatment |
|---------|-------------|----------------|-----------|
| 4 | Interest Holders | Y | On the Effective Date, all existing membership interests in the Debtor will be cancelled, annulled, and extinguished. |

As stated above, all membership interests in the Reorganized Debtor will be held by Parks Diversified.  In exchange for 100% of the membership interest in the Reorganized Debtor, the claim held by Parks Diversified against the estate, in the amount of $120,149.10, will be waived, and $150,000 was paid by Parks Diversified to the Debtor's general insolvency counsel for payment of the Debtor's legal fees and expenses.

### D.    **Means of Effectuating the Plan**

#### 1.    **Funding for the Plan**

The monthly distributions required to be made under the Plan will be funded by the rents generated from the Property.  The final appraisal of the Property (the "Appraisal") is attached hereto as Exhibit "6."  Cash flow projections demonstrating the Debtor's ability to fund the Plan are located at pages 102-105 of the Appraisal.  The Debtor has also provided a 7-year projection which demonstrates the Debtor's ability to make the plan payments starting on the Effective Date.  The 7-year projection is attached hereto as Exhibit "7."

#### 2.    **The Structure of the Reorganized Debtor and Post-Confirmation Management**

The Reorganized Debtor will be a duly formed California limited liability company. Parks Diversified will own 100% of the membership interest in the Reorganized Debtor.  In exchange for 100% of the membership interest in the Reorganized Debtor, the claim held by Parks Diversified against the estate, in the amount of $120,149.10, will be waived, and

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1  $150,000 was paid by Parks Diversified to the Debtor's general insolvency counsel for

2  payment of the Debtor's legal fees and expenses.  Parks Diversified will continue to

3  manage the day-to-day operations of the Reorganized Debtor.

4          **3.  Disbursing Agent**

5       The Reorganized Debtor shall act as the disbursing agent for the purpose of

6  making all the distributions provided for under the Plan.  The disbursing agent shall serve

7  without bond, and will not receive compensation for distribution services.

8         **E.    Risk Factors**

9       The Reorganized Debtor's ability to perform its obligations under the Plan are

10  subject to various factors and contingencies, some or which are described in this section.

11  The following discussion summarizes some of the material risks associated with the Plan,

12  but is not intended to be exhaustive.  Moreover, it should be read in connection with the

13  other disclosures contained in this Disclosure Statement and the Plan.  Each creditor, in

14  conjunction with its advisors, should supplement the following discussion by analyzing and

15  evaluating the Plan and the Disclosure Statement as a whole.  THE RISKS ASSOCIATED

16  WITH THE PLAN MUST BE CAREFULLY CONSIDERED IN DETERMINING WHETHER

17  TO ACCEPT THE PLAN.

18       The Reorganized Debtor's ability to make post Effective Date payments required by

19  the Plan depends on its ability to generate sufficient revenues from operations.  The

20  Reorganized Debtor's projected operating earnings and cash flow represent a prediction

21  of future events based upon certain assumptions.  Those assumptions are an integral

22  component of the Reorganized Debtor's projections.  Because these future events will not

23  necessarily occur, the projections cannot be relied upon as a guarantee of the

24  Reorganized Debtor's actual operations.  In fact, the Reorganized Debtor's actual

25  operations undoubtedly will differ from their projected operations.  However, the Debtor

26  has committed to making the payments described in the Plan.

27

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

386462.2

DISCLOSURE STATEMENT

1    **F.    Other Provisions of the Plan**

2        **1.    Executory Contracts and Unexpired Leases**

3        Under § 365(h) of the Bankruptcy Code, if the debtor rejects an unexpired lease of

4    real property under which the debtor is the lessor, the lessee has certain rights based on

5    that rejection.  The Debtor is not rejecting any lease that it currently holds as lessor with

6    any tenant of the Property.  All leases will remain in effect post-confirmation.  The Debtor

7    does not have any other executory contracts or unexpired leases which will be assumed

8    or rejected through the plan.

9        **2.    Changes in Rates Subject to Regulatory Commission Approval**

10        The Debtor is not subject to governmental regulatory commission approval of its

11    rates.

12        **3.    Retention of Jurisdiction**

13        The Court will retain exclusive jurisdiction during the Plan payout period to resolve

14    disputes and conflicts arising from the administration of the Plan, upon request of a party-

15    in-interest and after notice and a hearing, including, without limitation:

16        1.    The adjudication of the validity, scope, classification, allowance, and

17            disallowance of any claim;

18        2.    The estimation of any claim;

19        3.    The allowance or disallowance of professional-fee claims, compensation, or

20            other administrative claims;

21        4.    To hear and determine claims concerning taxes pursuant to Bankruptcy

22            Code §§ 346, 505, 525, and 1146;

23        5.    To hear and determine any action or proceeding brought under Bankruptcy

24            Code §§ 108, 510, 543, 544, 545, 547, 548, 549, 550, 551, and 553;

25        6.    To hear and determine all actions and proceedings which relate to pre-

26            confirmation matters;

27        7.    To hear and determine any issue relating to the assumption or rejection of

28            executory contracts and unexpired leases;

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

386462.2                        20                    DISCLOSURE STATEMENT

8.    To hear and determine any modification to the Plan in accordance with the Bankruptcy Rules and the Bankruptcy Code;

9.    To enforce and interpret the terms of the Plan;

10.    To correct any defects, cure any omissions, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purpose and intent of the Plan;

11.    The entry of any order, including injunctions, necessary to enforce title, rights and powers of the Debtor or Reorganized Debtor, and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Court may deem necessary including, without limitation, any right of the Debtor or Reorganized Debtor to recover and liquidate assets;

12.    To determine the validity, extent and priority of all liens and security interests against property of the estate or the Reorganized Debtor;

13.    To hear and resolve any disputes regarding employment applications and professional fees;

14.    To hear and determine such matters and make such orders as are consistent with the Plan as may be necessary to carry out the provisions thereof and to adjudicate any disputes arising under or relating to any order entered by the Court in this case;

15.    The entry of an order concluding and terminating this case; and

16.    To resolve any disputes as to whether there has been a default under the Plan.

**G.    Tax Consequences of Plan**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.  The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues the Plan may present to the Debtor.  The Debtor and its professionals

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

1    CANNOT and DO NOT represent that the tax consequences contained below are the only

2    tax consequences of the Plan because the Tax Code embodies many complicated rules

3    which make it difficult to state completely and accurately all the tax implications of any

4    action.

5        Due to the unsettled and complex nature of some of the tax issues, as well as the

6    possibility that developments subsequent to the date hereof could affect the tax

7    consequences of the Plan, the following discussion should not be regarded as definitive or

8    as covering all possible tax consequences.  Additionally, this summary does not discuss

9    all aspects of federal income taxation that may be relevant to a particular creditor in light

10    of its individual circumstances or to certain creditors subject to special treatment under the

11    federal income tax laws (for example, life insurance companies, tax-exempt organizations,

12    foreign corporations and individuals who are not citizens or residents of the United

13    States).

14        The Debtor does not anticipate any adverse tax consequences from

15    implementation of the Plan.

16    **IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES**

17        PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN

18    SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON

19    CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following

20    discussion is intended solely for the purpose of alerting readers about basic confirmation

21    issues, which they may wish to consider, as well as certain deadlines for filing claims.

22    The Debtor CANNOT and DOES NOT represent that the discussion contained below is a

23    complete summary of the law on this topic.

24        Many requirements must be met before the Court can confirm a Plan.  Some of the

25    requirements include that the Plan must be proposed in good faith, acceptance of the

26    Plan, whether the Plan pays creditors at least as much as creditors would receive in a

27    chapter 7 liquidation, and whether the Plan is feasible.  These requirements are not the

28    only requirements for confirmation.

386462.2                                22                           DISCLOSURE STATEMENT

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

## A.    Who May Vote or Object

### 1.    Who May Object to Confirmation of the Plan

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the plan.

### 2.    Who May Vote to Accept/Reject the Plan

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim that: (a) either is an allowed claim or is allowed for voting purposes; (b) is classified in an impaired class; and (c) is entitled to receive or retain some property on account of its claim.

### a.    What is an Allowed Claim/Interest

As noted above, a creditor must first have an allowed claim to have the right to vote.  Generally, any proof of claim will be allowed, unless a party in interest brings a motion objecting to the claim.  When an objection to a claim is filed, the creditor holding the claim cannot vote unless and until the Court, after notice and hearing, either overrules the objection or allows the claim for voting purposes.  Any person who seeks temporary allowance of its claim for the purpose of voting on the Plan must promptly take the steps necessary to file an appropriate motion requesting the same and to arrange an appropriate hearing with the Court.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE BY CLAIMANTS WHOSE CLAIMS WERE NOT SCHEDULED OR SCHEDULED AS DISPUTED, CONTINGENT, OR UNLIQUIDATED IS JANUARY 22, 2010.  A creditor may have an allowed claim even if a proof of claim was not timely filed.  A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim.  An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

b.    What is an Impaired Claim/Interest

As noted above, an allowed claim only has the right to vote if it is in a class that is impaired under the Plan.  A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.  For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed or otherwise impairs the legal rights of claim holders.

In this case, the Debtor believes that classes 1, 2, and 3 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan, unless otherwise specified below.  Any party in interest who disputes the Debtor's characterization of its claim or interest as being in an impaired or unimpaired class may file an objection to the Plan contending that the Debtor has incorrectly characterized the class.

3.    Who is **Not** Entitled to Vote

The following four types of claims are not entitled to vote:  (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Bankruptcy Code §§ 507(a)(1), (a)(2), (a)(3), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan.  Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan.  Claims entitled to priority pursuant to Bankruptcy Code §§ 507(a)(2), (a)(3), and (a)(8) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Bankruptcy Code.  Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan.  For this reason, class 4 is deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

4.    **Who Can Vote in More Than One Class**

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject the Plan in both capacities by casting

1 | one ballot for the secured portion of the claim and another ballot for the unsecured portion
2 | of the claim.

### 5.    Votes Necessary to Confirm the Plan

4 |   If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one
5 | impaired class has accepted the Plan without counting the votes of any insiders within that
6 | class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is
7 | eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in
8 | Section IV.A.8.

### 6.    Votes Necessary for a Class to Accept the Plan

10 |   A class of claims is considered to have accepted the Plan when more than one-half
11 | (½) in number, and at least two-thirds (⅔) in dollar amount, of the claims which actually
12 | voted, voted in favor of the Plan.  A class of interests is considered to have accepted the
13 | Plan when at least two-thirds (⅔) in amount of the interest holders of such class which
14 | actually voted, voted to accept the Plan.

### 7.    Treatment of Nonaccepting Classes

16 |   If at least one impaired class votes to accept the Plan, and other impaired classes
17 | vote to reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting
18 | classes are treated in the manner required by the Bankruptcy Code.  The process by
19 | which nonaccepting classes are forced to be bound by the terms of a Plan is commonly
20 | referred to as "cramdown." The Bankruptcy Code allows the Plan to be "crammed down"
21 | on nonaccepting classes of claims if it meets all consensual requirements except the
22 | voting requirements of § 1129(a)(8) and if the Plan does not "discriminate unfairly" and is
23 | "fair and equitable" toward each impaired class that has not voted to accept the Plan as
24 | referred to in § 1129(b) and applicable case law.

### 8.    Request for Confirmation Despite Nonacceptance by Impaired Classes

27 |   Because Class 4 is deemed to have rejected the Plan, the Debtor requests
28 | confirmation by "cramdown" as to this class.  The Debtor will also ask the Court to confirm

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

1   the Plan by "cramdown" as to any other impaired classes that do not vote to accept the

2   Plan.

3   **B.   Liquidation Analysis**

4        Another confirmation requirement is the so-called "Best Interest Test" embodied in

5   Bankruptcy Code § 1129(a)(7), which requires a liquidation analysis.  Under the Best

6   Interest Test, if a claimant is in an impaired class and that claimant does not vote to

7   accept the plan, then that claimant must receive or retain under the Plan property of a

8   value not less than the amount that such holder would receive or retain if the Debtor was

9   liquidated under Chapter 7 of the Bankruptcy Code.

10        In a chapter 7 case, the debtor's assets are usually sold by a chapter 7 trustee.

11   Secured creditors are paid first from the sales proceeds of properties on which the

12   secured creditor has a lien.  Administrative claims are paid next.  Next, unsecured

13   creditors are paid from any remaining sales proceeds, according to their rights to priority.

14   Unsecured creditors with the same priority share in proportion to the amount of their

15   allowed claims in relationship to the amount of total allowed unsecured claims.  Finally,

16   interest holders receive the balance that remains after all creditors are paid, if any.

17        For the Court to be able to confirm the Plan, the Court must find that all creditors

18   and interest holders who do not accept the Plan will receive at least as much under the

19   Plan as such holders would receive under a chapter 7 liquidation.  The Debtor maintains

20   that this requirement is met here because pursuant to the liquidation analysis below,

21   creditors are projected to receive at least as much as they would receive in a hypothetical

22   chapter 7.

23   **ASSETS VALUED AT LIQUIDATE VALUES:**

24   CURRENT ASSETS
    a.    The Property                                     $ 28,250,000

25

26   **TOTAL ASSETS AT LIQUIDATION VALUE**    $ 28,250,000

27   LESS
    a.    Secured Creditor (KeyBank) Recovery    $ 24,802,500

28       b.    Chapter 7 trustee fees and expenses    $     817,000

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000    Fax 714-966-1002

| | d. | Chapter 11 professional fees | $ | 160,000 |

d.  Chapter 11 professional fees — $ 160,000
e.  Chapter 11 non-professional fee administrative expense claims — $ 0
f.  Priority claims, excluding administrative expense claims — $ 29,354

TOTAL SECURED AND PRIORITY LIABILITIES — $ 25,808,854

1. Balance for unsecured claims — $ 2,441,146
2. Total amount of unsecured claims — $ 958,125

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CHAPTER 7 LIQUIDATION = 100%**

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE OR RETAIN UNDER THIS PLAN = 100%**

Below is a demonstration, in tabular format, that all creditors are projected to receive at least as much under the Plan as such creditor would receive under a chapter 7 liquidation.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Administrative Claims | 100% | 100% |
| Priority Tax Claims | 100% | 100% |
| Class 1 Secured Claims | 100% | 100% |
| Class 2 Priority Unsecured Claims | 100% | 100% |
| Class 3 General Unsecured Claims | 100% | 100% |
| Class 4 Interest Holders | 0% | 0%[8] |

**C.  Feasibility**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the

---

[8]  The Operating Agreement for the Debtor provides that in a liquidation, distributions should be made in the following order of priority: (A) outside creditors, (B) reserves for any contingent liabilities or obligations of the Debtor, (C) repayment of accrued interest and principal loans that have been made to the Debtor by its members, and (D) to the members, pro rata, in accordance with their positive capital accounts after they have been adjusted by the allocation of gain or loss. Here, Park Diversified's capital account has a positive balance of $6,000,000, while CODA Development has a negative balance. In any liquidation distribution, all funds paid to the Debtor's interest holders would be paid to Parks Diversified, CODA Development would receive nothing. Thus, CODA Development is receiving the same distribution under the Plan (its interest in the Debtor is being cancelled, annulled, and extinguished), as it would under a hypothetical chapter 7 liquidation. The Debtor has explained elsewhere in the Disclosure Statement why it is fair and equitable that Parks Diversified receive 100% of the membership interests in the Reorganized Debtor.

1    need for further financial reorganization of the Debtor or any successor to the Debtor

2    under the Plan, unless such liquidation or reorganization is proposed in the Plan.

3        There are at least two important aspects of a feasibility analysis. The first aspect

4    considers whether the Debtor will have enough cash on hand on the Effective Date of the

5    Plan to pay all the claims and expenses which are entitled to be paid on such date. The

6    Debtor maintains that this aspect of feasibility is satisfied. The cash necessary to pay

7    allowed administrative claims and statutory costs and charges on the Effective Date will

8    be paid by the Debtor from cash on hand.

9        The second aspect considers whether the Reorganized Debtor will have enough

10    cash over the life of the Plan to make the required Plan payments. The Debtor has

11    provided financial statements, which include both historical financial information (Exhibit

12    "2") and cash flow projections (Exhibit "6" and "7"). Under the Plan, the Reorganized

13    Debtor is required to make monthly payments from cash generated through operations to

14    KeyBank to service its secured claim. The Debtor's projections indicate that the

15    Reorganized Debtor will have sufficient net cash from operations to make the required

16    debt service payments under the Plan. The Debtor's projections further indicate it will

17    have sufficient net cash from operations to make the other projected payments under the

18    Plan. In sum, the Debtor believes that it will have sufficient cash on hand on the Effective

19    Date to fund the Plan, and to pay the other required expenses under the Plan from the

20    future cash flow of the Reorganized Debtor. The Debtor and its professionals do not

21    guarantee that the projections will be met. Moreover, the Debtor's professionals have

22    relied solely upon the data presented to them by the Debtor's management and their

23    consultants. YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR

24    FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE

25    FINANCIAL STATEMENTS.

26        **D.    <u>Claims</u>**

27        THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE BY

28    CLAIMANTS WHOSE CLAIMS WERE NOT SCHEDULED OR SCHEDULED AS

Smiley, Wang Ekvall & Strok, LLP
Welland, Golden,
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1030  Fax 714-966-1002

1  DISPUTED, CONTINGENT OR UNLIQUIDATED IS JANUARY 22, 2010.  Pursuant to the

2  Plan, the Reorganized Debtor or any other party in interest shall have up until 180 days

3  after the Effective Date to file objections to claims.  The Reorganized Debtor may obtain

4  an extension of this date by filing a motion in the Bankruptcy Court, based upon a showing

5  of "cause."  If, at the time of any distribution, a claim under the Plan is subject to a pending

6  objection, the Reorganized Debtor shall have the right to hold in trust any funds that would

7  be distributed to that claimant if the claim were allowed.  Any unused funds held in trust as

8  described in this Section shall, pursuant to the Plan, be distributed to the holders of

9  allowed general unsecured claims on a *pro rata* basis.

10  **V.    EFFECT OF CONFIRMATION**

11       **A.    Discharge**

12       The rights under the Plan and the treatment of claims under the Plan will be in

13  exchange for, and in complete satisfaction, discharge, and release of, all claims of any

14  nature whatsoever (including, without limitation, any interest accrued on claims from and

15  after the Petition Date) against the Debtor, the Reorganized Debtor, or its property.

16  Except as otherwise provided in the Plan or the Confirmation Order:

17       1.    On the Effective Date, the Debtor, the Debtor's estate, the Reorganized

18            Debtor, and its property will, to the fullest extent permitted by Bankruptcy

19            Code § 1141, be deemed discharged and released from any and all claims,

20            including, without limitation, all demands, liabilities, claims, that arose before

21            the confirmation date or that are based upon or otherwise relate to acts,

22            events, omissions, transactions or other activities of any kind that occurred

23            before the confirmation date, and all debts of the kind specified in

24            Bankruptcy Code §§ 502(g), 502(h), or 502(l) regardless of whether: (1) a

25            proof of claim based on such a debt is filed or deemed filed; (2) a claim

26            based on such a debt is allowable under Bankruptcy Code § 502; or (3) the

27            person holding the claim based on such a debt has accepted the Plan;

28

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000   Fax 714-966-1002

386462.2                    29                    DISCLOSURE STATEMENT

2.    All persons will be precluded from asserting against the Debtor, its estate, the Reorganized Debtor, or its property any other or further claims based on, arising from, or in connection with any act, event, omission, transaction, or other activity of any kind that occurred before the confirmation date;

3.    Any debt of the Debtor, whether secured or unsecured, which was in default as of or any time prior to the confirmation date, will no longer be deemed in default.  Moreover, to the extent that the Debtor complies with the terms and conditions of the Plan, these obligations will be deemed in good standing;

4.    As set forth in Bankruptcy Code §§ 524 and 1141, except as otherwise provided in the Plan or the Confirmation Order, the Confirmation Order constitutes a discharge of any and all claims against, and all debts and liabilities of, the Debtor.  The Reorganized Debtor and its property will, to the fullest extent permitted by Bankruptcy Code § 1141, be deemed discharged and released from any and all claims, including, without limitation, all demands, liabilities, claims, that arose before the confirmation date or that are based on or otherwise relate to acts, events, omissions, transactions or other activities of any kind that occurred before the confirmation date.  This discharge will void any judgment that was obtained against the Debtor at any time only to the extent that the judgment relates to a discharged claim; and

5.    Subject to the limitations and conditions imposed under Bankruptcy Code § 1125(e), persons who–in good faith and in compliance with applicable Bankruptcy Code provisions–either solicit Plan acceptances or rejections or participate in the offer, issuance, sale, or purchase of securities under the Plan will not be liable on account of their solicitation or participation for violation of any applicable law, rule, or regulation governing the solicitation of Plan acceptances or rejections or the offer, issuance, sale or purchase of such securities.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

386462.2

DISCLOSURE STATEMENT

**B.    Revesting of Property in the Reorganized Debtors**

Except as provided in the Plan or in any agreements contemplated under the Plan, the confirmation of the Plan revests all the property of the estate in the Reorganized Debtor.

**C.    Modification of the Plan**

The Debtor may modify the Plan at any time before confirmation.  If the Plan is modified, however, the Court may require a new disclosure statement or re-voting on the Plan depending upon the nature of the modifications and their effect on parties in interest. The Debtor may also seek to modify the Plan at any time after confirmation if: (a) the Plan has not been substantially consummated; and (b) the Court, after notice and a hearing, authorizes the proposed modification.

**D.    Post-Confirmation Status Report**

Within 120 days of the entry of the Confirmation Order, the Reorganized Debtor shall file a status report with the Court explaining what progress has been made towards consummation of the confirmed Plan.  The status report shall be served on the OUST, KeyBank, and the members of the Committee.  Further status reports shall be filed every 120 days and served on the same entities.

**E.    Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) prior to confirmation shall be paid to the OUST on or before the Effective Date.  Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the OUST by the Reorganized Debtor until a final decree, or the entry of an order dismissing the case or converting the case to chapter 7, at the rate in effect at the time such fees are due.

**F.    Post-Confirmation Conversion/Dismissal**

After the Plan is confirmed, a creditor or party in interest may bring a motion, only after notice and a hearing, to convert or dismiss this case under Bankruptcy Code § 1112(b) if there is a material default in performing the Plan.  If the Court orders the case converted to chapter 7 after the Plan is confirmed, then all property that had been property

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000 Fax 714-966-1002

1  of the estate and that has not been distributed under the Plan will revest in the chapter 7

2  estate.  The automatic stay will be reimposed upon the revested property only to the

3  extent that relief from stay was not previously authorized by the Court during the case.

4      The Confirmation Order may also be revoked under very limited circumstances.

5  The Court may revoke the Confirmation Order if it was procured by fraud and if a party in

6  interest brings an adversary proceeding to revoke the confirmation within 180 days after

7  the entry of the Confirmation Order.

8      **G.    Final Decree**

9      Once the estate has been fully administered as referred to in Bankruptcy Rule

10  3022, the Reorganized Debtor will file a motion with the Court to obtain a final decree

11  closing the case.

12

13  Dated: February 1, 2010                WEILAND, GOLDEN
                                           SMILEY, WANG EKVALL & STROK, LLP
14
15                                         By: _Beth Gaschen_____
16                                             BETH E. GASCHEN
                                               Attorneys for Debtor,
                                               North Valley Mall, LLC, a California
17                                             limited liability company
18
19
20
21
22
23
24
25
26
27
28

386462.2                                    32                         DISCLOSURE STATEMENT

1

## DECLARATION OF DAVID KLEIN

2

3          I, David Klein, declare as follows:

4          1.      I am a partner of Parks Diversified, the property manager of North Valley

5    Plaza ("Property"), the real property of North Valley Mall, LLC ("Debtor"), debtor and

6    debtor-in-possession in the above captioned case.  I am submitting this Declaration in

7    support of the Debtor's Disclosure Statement Describing Chapter 11 Plan of

8    Reorganization (the "Disclosure Statement").  All terms defined in the Disclosure

9    Statement are incorporated herein by this reference.  The following is based upon my

10   personal knowledge and if called as a witness herein, I could and would competently

11   testify thereto.

12         2.      The Debtor's general insolvency counsel, Weiland Golden, prepared this

13   Disclosure Statement and the accompanying Plan at the direction of, and with the review,

14   input, and assistance of the Debtor's management and other professionals, including

15   myself.

16         3.      All financial data referenced in this Disclosure Statement and the

17   accompanying Plan has been generated by the Debtor from the information in its books

18   and records.

19         4.      All facts and representations in this Disclosure Statement and the

20   accompanying Plan are true to the best of my knowledge.

21         5.      To the best of my knowledge, the Disclosure Statement includes all facts

22   that would be material to a creditor in determining whether to vote to accept or reject the

23   Plan.

24         I declare under penalty of perjury that the foregoing is true and correct.

25         Executed on this 1st day of February, 2010, at Dana Point, California.

26

27                                              /s/ David Klein

28                                              David Klein

*Smiley, Wang Ekvall & Strok, LLP*
*Weiland, Golden,*
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714-966-1000  Fax 714-966-1002

386462.2                           33                    DISCLOSURE STATEMENT

# EXHIBIT 1

# SUMMONS
## (CITACION JUDICIAL)

SUM-100

**NOTICE TO DEFENDANT:** KEYBANK, N.A., a national banking
**(AVISO AL DEMANDADO):** association; and DOES 1 through
20, inclusive

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

NOV 1 6 2009

ALAN CARLSON, Clerk of the Court

BY:      E. VELOZ      ,DEPUTY

**YOU ARE BEING SUED BY PLAINTIFF:** NORTH VALLEY MALL, LLC,
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):** a California
limited liability company

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| | |
|---|---|
| The name and address of the court is:<br>(El nombre y dirección de la corte es):<br>Superior Court of California - County of Orange<br>Central Justice Center<br>700 Civic Center Drive West<br>Santa Ana, CA 92701 | CASE NUMBER:<br>(Número del Caso):<br>30-2009<br>**00320751** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Jon R. Robertson, Esq. (SBN 134490)
ROBERTSON + THOMARSON, Suite 1050
5 Hutton Centre Drive, Suite 1050
Santa Ana, CA 92707
Tel: (714) 361-2111   Fax: (714) 361-2110

JUDGE SHEILA FELL
DEPT. C22

DATE: NOV 16 2009 **ALAN CARLSON**      **ENRIQUE VELOZ**      , Deputy
(Fecha)                    (Secretario)                              (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):

   under: ☐ CCP 416.10 (corporation)         ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Legal
Solutions

Code of Civil Procedure §§ 412.20, 465

Exhibit 1 Page 34

1    JON R. ROBERTSON, ESQ. (SBN 134490)

2    RONALD J. THOMMARSON, ESQ. (SBN 173849)
**ROBERTSON + THOMMARSON, LLP**

3    5 Hutton Centre Drive, Suite 1050
Santa Ana, CA 92707

4    Tel: (714) 361-2111
Fax: (714) 361-2110

5

6    Attorneys for Plaintiff,
**NORTH VALLEY MALL, LLC,**
a California limited liability company

7

8

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

NOV 1 8 2009

ALAN CARLSON, Clerk of the Court.

BY: _____ E. VELOZ _____ ,DEPUTY

9          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10               **COUNTY OF ORANGE**

11              **CENTRAL JUSTICE CENTER**

30-2009

**0 0 3 2 0 7 5 1**

12

13        CASE NO:

14    **NORTH VALLEY MALL, LLC,**     )   *Assigned for all purposes to:*
a California limited liability company,   )   *Honorable*

15               Plaintiff,       )   *Dept:*   **JUDGE SHEILA FELL
DEPT. C22**

16    v.                     )   **COMPLAINT FOR:**

17    **KEYBANK, N.A.,** a national banking   )   1)   **Breach of Contract;**
association; and **DOES** 1 through 20,   )   2)   **Negligence;**

18    inclusive,                 )   3)   **Fraud; and**
                        )   4)   **Conversion.**

19              Defendants.     )

20                          )

21       Plaintiff, **NORTH VALLEY MALL, LLC,** a California limited liability company,

22   alleges as follows:

23                      <u>**PARTIES**</u>

24       1.     At all times mentioned herein, **NORTH VALLEY MALL, LLC,** a California

25   limited liability company ("NVM" or "Plaintiff") is and was a valid California limited liability

26   company in good standing doing business in Orange County, California.

27       2.     Plaintiff is informed and believes, and on that basis alleges, that defendant

28   **KEYBANK, N.A.** ("KeyBank") is a national banking association doing business in Orange

*(left margin, vertical)* **ROBERTSON + THOMMARSON, LLP**   5 Hutton Centre Drive, Suite 1050   Santa Ana, California 92707   TELEPHONE (714) 361-2111 • FACSIMILE (714) 361-2110

1

**COMPLAINT**

Exhibit 1 Page 35

1    County, California.

2        3.    The true names and capacities, whether individual, corporate, associate, or

3    otherwise, of Defendants DOES 1 through 20, inclusive, are unknown to Plaintiff, and therefore,

4    Plaintiff sues these Defendants by such fictitious names.  Plaintiff is informed and believes, and

5    on that basis alleges, that each of the Defendants designated as a fictitiously named defendant is,

6    in some manner, responsible for the events and happenings referred to herein.

7        4.    Plaintiff is informed and believes, and on that basis alleges, that each of the

8    Defendants named herein, including DOES 1 through 20, inclusive, were, at all material times,

9    the agents, servants, employees, or partners of each of the other Defendants, and in doing the

10    things alleged, the Defendants, and each of them, were acting with notice, within the course and

11    scope of their agency, and with the consent, approval, and/or ratification of each of the other

12    Defendants. Collectively, KeyBank DOES 1 through 20, inclusive, are sometimes referred to

13    hereafter as the "Defendants."

14        5.    Plaintiff is further informed and believes, and on that basis alleges, that

15    Defendants, and each of them, ratified, consented to, had notice of, and/or approved the conduct

16    of each of the remaining Defendants as hereinafter alleged.

17                    **GENERAL ALLEGATIONS**

18        6.    This dispute surrounds the financing of certain real property known as the North

19    Valley Mall in Chico, California (the "Property").  KeyBank is the current holder of a mortgage

20    loan in the original principal amount of $26,250,000.00 (the "Loan") made to Plaintiff pursuant

21    to that certain Loan Agreement dated as of July 30, 2004 between Plaintiff and KeyBank, as

22    amended by that certain First Amendment to Construction Loan Agreement dated as of

23    September 28, 2005, that certain Second Amendment to Construction Loan Agreement dated as

24    of August 1, 2006, that certain Third Amendment to Construction Loan Agreement dated as of

25    November 1, 2006, that certain Fourth Amendment to Construction Loan Agreement dated as of

26    February 1, 2007, that certain Fifth Amendment to Construction Loan Agreement dated as of

27    June 1, 2007, that certain Sixth Amendment to Construction Loan Agreement dated as of

28    September 1, 2007, that certain Seventh Amendment to Construction Loan Agreement dated as

ROBERTSON + THORMARSON, LLP
5 Hutton Centre Drive, Suite 1050
Santa Ana, California 92707
TELEPHONE (714) 382-2311 ♦ FACSIMILE (714) 361-2110

2

COMPLAINT

Exhibit 1 Page 36

1   of November 1, 2007, that certain Eighth Amendment to Construction Loan Agreement dated as

2   of January 2, 3008, and that certain Ninth Amendment to Construction Loan Agreement dated as

3   of July 1, 2008 (collectively, the "Loan Agreement").

4        7.    On or about November 2007, Plaintiff executed and delivered to KeyBank the

5   Clearing Account Agreement and the Cash Management Services Master Agreement ("Clearing

6   Agreement"). On or about January 2, 2008, Plaintiff executed and delivered to Key Bank the

7   Amendment to Clearing Agreement. Pursuant to these agreements, Plaintiff agreed to have all

8   rents and other revenue from the Property be deposited monthly into an account with KeyBank as

9   clearing agent. As of August 2009, $910,879.55 of Plaintiff's money obtained from rent and

10   other income from the Property was held in the Clearing Account.

11        8.    The term of the Loan Agreement matured on or about October 1, 2008. Plaintiff has

12   diligently attempted to obtain financing to repay the amount due under the Loan Agreement.

13   Unfortunately, given the calamitous state of the economy, Plaintiff has not been able to obtain

14   financing for the Property to repay KeyBank the amount owed under the Loan Agreement.

15   Plaintiff continued to operate and manage the Property as required by the Loan Agreement.

16        9.    On or about February 1, 2009, KeyBank declared a default under the Loan

17   Agreement.

18        10.   On or about February 3, 2009, KeyBank recorded a Notice of Default in Butte

19   County, California. KeyBank caused a Notice of Trustee's Sale to be published for the Property

20   and for certain described personal property, including those funds in the Clearing Account.

21   Attached hereto as **Exhibit "1"** is a true and correct copy of the Notice of Trustee's Sale.

22   Pursuant to the Notice of Trustee's Sale, the trustee's sale was set for June 25, 2009. The

23   trustee's sale was continued several times, up to and until September 8, 2009, by mutual

24   agreement of Plaintiff and KeyBank.

25   ///

26   ///

27   ///

28

ROBERTSON + THOMMARSON, LLP
5 Hutton Centre Drive, Suite 1050
Santa Ana, California 92707
TELEPHONE (714) 361-2111 • FACSIMILE (714) 361-2110

3

**COMPLAINT**

Exhibit 1 Page 37

## FIRST CAUSE OF ACTION

*(For Breach of Written Contract Against all of the Defendants and Does 1 Through 5, Inclusive)*

11.    Plaintiff incorporates by reference the allegations set forth hereinabove as if fully set forth at length in support of this cause of action.

12.    On or about August 14, 2009, one of Plaintiff's counsel negotiated with Morgan Jones of McDonough Holland & Allen, counsel for KeyBank, in an effort to set up a meeting to discuss the debt repayment issues that existed between Plaintiff and KeyBank. Mr. Jones expressed that KeyBank had an interest in discussing the possibility of entering into a forbearance agreement between the parties as of August 16, 2009. The next day, Mr. Jones requested that the terms of a proposed forbearance agreement be sent in writing, which was provided to him by counsel for Plaintiff in an email dated August 19, 2009. At this time, Plaintiff and KeyBank agreed that the trustee's sale would be continued until September 3, 2009. Just two days later, KeyBank, without notice to Plaintiff, made its first withdrawal from the Clearing Account by taking $705,610.89 of Plaintiff's funds therefrom, despite the fact that the trustee's sale was continued by agreement of the parties.

13.    On August 22, 2009, Plaintiff was led to believe that KeyBank was willing to work towards a settlement with Plaintiff. KeyBank agreed to further postpone the trustee's sale until August 28, 2009. On August 27, 2009, counsel for Plaintiff sent an email to Mr. Jones following up on the proposed settlement terms that had been sent to him, noting that there would be a further meeting on August 28, 2009, and confirming that the trustee's sale was continued until September 8, 2009. Despite an agreement to the contrary, KeyBank made an additional withdrawal of Plaintiff's funds from the Clearing Account this same day, in the amount of $205,268.66, again without notice to Plaintiff.

14.    Between August 28, 2009 and August 31, 2009, multiple emails were sent between counsel for Plaintiff and Mr. Jones wherein settlement terms were discussed, including Plaintiff's demand for release of its funds in the Clearing Account. At no time did Mr. Jones or KeyBank inform Plaintiff that it had withdrawn $910,879.55 of Plaintiff's money from the Clearing Account during this time period.

4

COMPLAINT

ROBERTSON + TEOMMARSON, LLP
5 Hutton Centre Drive, Suite 1050
Santa Ana, California 92707
TELEPHONE (714) 385-2111 • FACSIMILE (714) 385-2110

Exhibit 1 Page 38

15.     The actions described above caused harm to Plaintiff.  By wrongfully taking Plaintiffs' money from the Clearing Account, Plaintiff had no ability to pay its property taxes and other expenses which were owed to operate the Property, and thus had no ability to obtain financing to pay to KeyBank the balance owed under the Loan Agreement.  This forced Plaintiff to file for bankruptcy court protection on September 2, 2009.

16.     Despite the terms of the Clearing Agreement, the terms of the Notice of Trustee's Sale and the agreement of Plaintiff and KeyBank in their settlement negotiations, KeyBank breached the terms of these agreements and withdrew $910,879.55 of Plaintiff's money from the Clearing Account, after agreeing to postpone the trustee's sale.

17.     Plaintiff has not materially breached any agreement it had with Defendants, except for those excused by the conduct of Defendants or by novation or other agreements.

18.     As a direct and proximate result of the breach by contract by these Defendants, Plaintiff has been damaged by being forced to file for bankruptcy protection.  The damages associated with filing for bankruptcy court protection include a significantly increased interest rate on any permanent financing obtained to repay KeyBank or any other loan to be obtained for Plaintiff, as well as attorneys' fees and costs incurred in filing for bankruptcy court protection. Plaintiff has been damaged in an amount to be proven at trial but in no event less than $26,000,000.00, and attorneys' fees and costs, pursuant to the terms of the Clearing Account Agreement and the Loan Agreement.

## SECOND CAUSE OF ACTION

*(For Negligence Against all of the Defendants and Does 1 Through 5, Inclusive)*

19.     Plaintiff incorporates by reference the allegations set forth hereinabove in paragraphs 1 through 18 as if fully set forth at length in support of this cause of action.

20.     Plaintiff is informed and believes, and on that basis alleges, that the Defendants owed it a duty of due care in the servicing the loans identified in the Loan Agreement which would include the negotiations surrounding the payoff of the Loan Agreement and the trustee's sale.

21.     Plaintiff is informed and believes, and on that basis alleges, that the

ROBERTSON + THEOMARSON, LLP
5 Hutton Centre Drive, Suite 1000
Santa Ana, California 92707
TELEPHONE (714) 360-2111 ♦ FACSIMILE (714) 360-2110

5

**COMPLAINT**

Exhibit 1 Page 39

1   Defendants breached this duty by failing to exercise due care in the negotiations surrounding

2   the payoff of the Loan Agreement and by advising Plaintiff that no trustee's sale would take

3   place during a certain period of time when in actuality, the Defendants foreclosed on Plaintiff's

4   property, specifically Plaintiff's funds in the Clearing Account.

5        22.     Plaintiff has not materially breached any duty it owed to Defendants, except for

6   those excused by the conduct of Defendants or by novations or other agreements.

7        23.     As a direct and proximate result of the breach by contract by these Defendants,

8   Plaintiff has been damaged by being forced to file for bankruptcy protection. The damages

9   associated with filing for bankruptcy court protection include a significantly increased interest

10   rate on any permanent financing obtained to repay KeyBank or any other loan to be obtained for

11   Plaintiff, as well as attorneys' fees and costs incurred in filing for bankruptcy court protection.

12   Plaintiff has been damaged in an amount to be proven at trial but in no event less than

13   $26,000,000.00, and attorneys' fees and costs, pursuant to the terms of the Clearing Account

14   Agreement and the Loan Agreement.

15                 **THIRD CAUSE OF ACTION**

16       *(For Fraud Against all of the Defendants and Does 1 Through 10, Inclusive)*

17        24.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through

18   23 hereinabove as though fully set forth at length herein in support of this cause of action.

19        25.     Plaintiff is informed and believes, and on that basis alleges, that the

20   Defendants and Does 1 through 10, and each of them, conspired to defraud Plaintiff of

21   $910,879.55 of Plaintiff's money from the Clearing Account through false and fraudulent

22   representations, including, but not limited to, claiming to refrain from instituting

23   trustee's sale proceedings and pretending to negotiate with Plaintiff concerning a possible

24   forbearance agreement.

25        26.     Plaintiff is informed and believes, and on that basis alleges, that the Defendants

26   named in this cause of action together ordered, supervised, and compiled the false and

27   misleading communications mentioned above, and intentionally deceived Plaintiff into believing

28   that they were negotiating in good faith while all the while the Defendants were merely delaying

6

---

COMPLAINT

ROBERTSON + THOMMARSON, LLP
5 Hutton Centre Drive, Suite 1050
Santa Ana, California 92707
TELEPHONE (714) 265-2211 • FACSIMILE (714) 265-2110

Exhibit 1 Page 40

1    Plaintiff so that they could wrongfully withdraw $910,879.55 of Plaintiff's money from the

2    Clearing Account.

3        27.    Plaintiff is informed and believes, and on that basis allege, that Defendants, and

4    each of them, formed and operated a conspiracy with each of the other Defendants to commit the

5    acts and omissions alleged, and that the acts and omissions were committed in furtherance of the

6    conspiracy.

7        28.    Plaintiff is are informed and believes, and on that basis alleges, that all

8    of the Defendants participated in the preparation and communication of the misrepresentations

9    alleged above with the intent to deceive Plaintiff into believing that a forbearance agreement

10    might be entered into which could resolve the dispute between Plaintiff and KeyBank and allow

11    Plaintiff to use its funds in the Clearing Account to pay its property taxes and other expenses

12    which were owed to operate the Property, and thus be able to obtain financing to pay to KeyBank

13    the balance owed under the Loan Agreement.

14        29.    In entering into the negotiations concerning the potential forbearance agreement,

15    Plaintiff reasonably relied on the representations made by the Defendants.

16        30.    As a direct and proximate result of the breach by contract by these Defendants,

17    Plaintiff has been damaged by being forced to file for bankruptcy protection. The damages

18    associated with filing for bankruptcy court protection include a significantly increased interest

19    rate on any permanent financing obtained to repay KeyBank, or any other loan to be obtained for

20    Plaintiff, as well as attorneys' fees and costs incurred in. filing for bankruptcy court protection.

21    Plaintiff has been damaged in an amount to be proven at trial but in no event less than

22    $26,000,000.00, and attorneys' fees and costs, pursuant to the terms of the Clearing Account

23    Agreement and the Loan Agreement.

24        31.    The acts and conduct of Defendants, and each of them, were done with a

25    conscious disregard of Plaintiff's rights and with a specific intent to defraud and injure the

26    Plaintiff, such as to constitute fraud, oppression, and malice under California *Civil Code* § 3294.

27    By virtue of the Defendants' willful and wrongful conduct, Plaintiffs are entitled to punitive and

28    exemplary damages as determined by this Court.

ROBERTSON + THOMMARSON, LLP
5 Hutton Centre Drive, Suite 1000
Santa Ana, California 92707
TELEPHONE (714) 361-2111 • FACSIMILE (714) 361-2110

7

---

**COMPLAINT**

Exhibit 1 Page 41

## FOURTH CAUSE OF ACTION

*(For Conversion Against all of the Defendants and Does 1 Through 10, Inclusive)*

32.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 31 hereinabove as though fully set forth at length herein in support of this cause of action.

33.    Plaintiff's funds, to which it had a right to possession and control, in the amount of $910,879.55, were deposited in the Clearing Account.

34.    Pursuant to paragraph 7 of the Clearing Agreement, KeyBank waived any right to a security interest in the funds which were deposited in the Clearing Account.

35.    Without a security interest or any other right to do so, Defendants withdrew, or ordered the withdrawal of, Plaintiff's $910,879.55 from the Clearing Account. Thus, KeyBank as wrongfully deprived Plaintiff of possession and control of its funds.

36.    Despite Plaintiff's demand for the return of its money, none of the Plaintiff's $910,879.55 deposited in the Clearing Account has been returned to it.

37.    As a direct and proximate result of the breach by contract by these Defendants, Plaintiff has been damaged by being forced to file for bankruptcy protection. The damages associated with filing for bankruptcy court protection include a significantly increased interest rate on any permanent financing obtained to repay KeyBank, or any other loan to be obtained for Plaintiff, as well as attorneys' fees and costs incurred in filing for bankruptcy court protection. Plaintiff has been damaged in an amount to be proven at trial but in no event less than $26,000,000.00, and attorneys' fees and costs, pursuant to the terms of the Clearing Account Agreement and the Loan Agreement.

38.    The acts and conduct of Defendants, and each of them, were done with a conscious disregard of Plaintiff's rights and with a specific intent to defraud and injure the Plaintiff, such as to constitute fraud, oppression, and malice under California *Civil Code* § 3294. By virtue of the Defendants' willful and wrongful conduct, Plaintiffs are entitled to punitive and exemplary damages as determined by this Court.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as

8

COMPLAINT

Exhibit 1 Page 42

ROBERTSON + THOMASSON, LLP
5 Hutton Centre Drive, Suite 1050
Santa Ana, California 92707
TELEPHONE (714) 361-2111 • FACSIMILE (714) 361-2110

follows:

## AS TO THE FIRST AND SECOND CAUSES OF ACTION

A.    For general damages in an amount to be proven at trial, but in no event less than $26,000,000.00;

B.    For interest as allowed by law;

C.    For reasonable attorneys' fees and costs incurred in this action according to proof;

D.    For such other relief as the Court deems just and proper.

## AS TO THE THIRD AND FOURTH CAUSES OF ACTION

A.    For general damages in an amount to be proven at trial, but in no event less than $26,000,000.00;

B.    For punitive damages in an amount to be proven at trial;

C.    For interest as allowed by law;

D.    For reasonable attorneys' fees and costs incurred in this action according to proof;

E.    For such other relief as the Court deems just and proper.

ROBERTSON + THOMMARSON, LLP

Dated: November ___, 2009

By: _____
JON R. ROBERTSON
RONALD J. THOMMARSON
Attorneys for Plaintiff,
NORTH VALLEY MALL, LLC, a
California limited liability company

Z:\wp docs\Docs 28\2840 North Valley Mall LLC – General\Plead\Complaint.wpd

ROBERTSON + THOMMARSON, LLP
5 Hutton Centre Drive, Suite 1000
Santa Ana, California 92707
TELEPHONE (714) 361-2111 ♦ FACSIMILE (714) 361-2110

9

COMPLAINT

Exhibit 1 Page 43